Qian v. Zheng, 2025 NCBC 46.

STATE OF NORTH CAROLINA

NASH COUNTY

JIA QIAN; JIANGANG JIAO; and
LINA LI,

        Plaintiffs,
Counterclaim
Defendants, and
Crossclaim
Defendants,

and

GUANGYUAN LI; PEIJUN YIN;
JIAN ZHANG, et al.,

        Intervenor
Plaintiffs and
Counterclaim
Defendants,

v.

LIJIA ZHENG; YAWEI ZHENG;
HAOYU QI; and FANG LIN;

        Defendants,
Counterclaim
Plaintiffs, and
Crossclaim
Defendants

HALIFAX SAFEGUARD PROPERTY,
LLC;

        Defendant,
Counterclaim
Plaintiff, and
Crossclaim
Plaintiff,

and

CAROLINA SAWMILLS, L.P.

        Nominal
Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23CVS000581-630

**ORDER AND OPINION ON
INDIVIDUAL DEFENDANTS' AND
HALIFAX SAFEGUARD PROPERTY,
LLC'S MOTIONS TO DISMISS
INTERVENORS' SECOND AMENDED
COMPLAINT IN INTERVENTION**

1. **THIS MATTER** is before the Court on the following motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)") in the above-captioned case:

    a. Defendants Lijia Zheng, Yawei Zheng, Fang Lin, and Haoyu Qi's (collectively, the "Individual Defendants") Motion to Dismiss Intervenors' Second Amended Complaint in Intervention;[1] and

    b. Defendant Halifax Safeguard Property, LLC's ("Halifax") Motion to Dismiss Intervenors' Second Amended Complaint in Intervention (each a "Motion," collectively the "Motions").[2]

2. Having considered the Motions, the parties' briefs in support of and in opposition to the Motions, the Intervenors' Second Amended Complaint in Intervention,[3] the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** the Motions.

*Jia Qian, Jiangang Jiao, and Lina Li, pro se.*

*Reid & Wise, LLC, by Matthew Sava, and Fitzgerald, Hanna & Sullivan, PLLC, by Douglas W. Hanna, for Intervenor Plaintiffs.*

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Jennifer K. Van Zant, Kearns Davis, William A. Robertson, Cameron V. Ervin, and Jimmy Chang, for Defendants Lijia Zheng, Yawei Zheng, Fang Lin, and Haoyu Qi.*

---

[1] (Defs.' Mot. Dismiss Intervenors' Second Am. Compl. Intervention, ECF No. 252.)

[2] (Mot. Halifax Safeguard Prop., LLC Dismiss Intervenors' Second Am. Compl. Intervention, ECF No. 258.)

[3] (Second Am. Compl. Intervention, ECF No. 250.)

*Wagner Hicks, PLLC, by Sean C. Wagner, Jonathon D. Townsend, and Meagan L. Allen, for Defendant Halifax Safeguard Property LLC.*

Brown, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     The Court does not make findings of fact when ruling on motions to dismiss under Rule 12(b)(6).   Rather, the Court recites the allegations asserted and documents referenced in the challenged pleading—here, Intervenors' Second Amended Complaint in Intervention—that are relevant and necessary to the Court's determination of the Motions.   The following background assumes that the well-pleaded factual allegations of the Second Amended Complaint in Intervention are true.  *See, e.g., White v. White,* 296 N.C. 661, 667 (1979) (requiring the trial court to treat a complaint's well-pleaded allegations as true under Rule 12(b)(6)).

4.     Nominal Defendant Carolina Sawmills, LP ("CSLP") is a limited partnership organized under the laws of North Carolina.[4]  Defendant Halifax, a North Carolina limited liability company with its registered office located in Nash County, is the current General Partner of CSLP.[5]  Halifax, in turn, is managed by a nine-member management committee.[6]  *Pro se* plaintiffs Jia Qian, Jiangang Jiao, and Lina Li and the Individual Defendants are members of Halifax as well as members of Halifax's

---

[4] (Second Am. Compl. Intervention ¶ 21.)

[5] (Second Am. Compl. Intervention ¶ 20.)

[6] (Second Am. Compl. Intervention ¶ 59.)

management committee.[7]  Intervenor Plaintiffs ("Intervenors") are two members of Halifax and thirty-three limited partners of CSLP.[8]

5.     In a bid to obtain permanent residency in the United States, 151 Chinese nationals, including the Intervenors, invested $500,000 each in CSLP through the EB-5 immigration program.[9]  The investment funds, totaling $75,500,000, were then loaned by CSLP to Klausner Lumber Two LLC ("KL2"), a sawmill, to satisfy the EB-5 program's investment and job creation requirements.[10]

6.     On 10 June 2020, KL2 filed for bankruptcy relief.[11]  Soon after, on 21 September 2020, Defendant Halifax was appointed as substitute General Partner of CSLP following a judgment in a civil action brought by several of CSLP's limited partners during the KL2 bankruptcy proceeding.[12]

7.     On 24 February 2023, the U.S. Bankruptcy Court for the District of Delaware issued an order in KL2's bankruptcy proceeding directing KL2's liquidating

---

[7] (Second Am. Compl. Intervention ¶¶ 11–17.)

[8] (Second Am. Compl. Intervention ¶ 10.)  The two members of Halifax are also within the group of thirty-three limited partners of CSLP.

[9] (Second Am. Compl. Intervention ¶ 8.)  By investing in CSLP, the Chinese nationals became limited partners of CSLP.

[10] (Second Am. Compl. Intervention ¶ 9.)

[11] (Second Am. Compl. Intervention ¶ 9.)

[12] (Second Am. Compl. Intervention ¶ 9.)

trust to distribute $31,500,000 to CSLP.[13] The distribution was made to CSLP on or about 14 March 2023.[14]

8.      The action currently before this Court concerns the use and management of the funds received by CSLP from the KL2 bankruptcy proceeding. According to the Intervenors, "[o]nce the bankruptcy proceeds were received in March 2023, there was a 12-month period under [U.S. Citizenship and Immigration Services] guidance in which management should have commenced a careful and deliberative process to determine the amount of the proceeds to be reinvested for those investors requiring reinvestment and to be distributed to those investors not requiring reinvestment and to identify a suitable reinvestment target [consistent with the requirements of the EB-5 program]."[15] Instead, the Intervenors claim, the members of Halifax's management committee "immediately launched into a back-and-forth battle over control of the [CSLP] Partnership funds and management decisions, resulting in the filing of this lawsuit in April 2023."[16]

9.      In late July or early August 2023, the *pro se* plaintiffs, Individual Defendants, and Halifax entered into a Settlement Agreement intended to resolve the parties' disputes over CSLP's management.[17] The Settlement Agreement

---

[13] (Second Am. Compl. Intervention ¶ 56.)

[14] (Second Am. Compl. Intervention ¶ 56.)

[15] (Second Am. Compl. Intervention ¶ 57.)

[16] (Second Am. Compl. Intervention ¶ 57.)

[17] (Second Am. Compl. Intervention ¶ 58.)

purported to, among other things, (1) call for the appointment of a Professional Manager to handle all day-to-day operations of Halifax and CSLP[18] and (2) create two committees—a Redeployment Committee and a Distribution Committee—authorized to submit a proposal for the redeployment and distribution of CSLP's funds.[19] The parties contested the enforceability of the Settlement Agreement, however, which resulted in a lack of resolution of the disputes over CSLP's management and the use of CSLP funds. [20]

10.     On 23 February 2024, the Intervenors filed a Complaint in Intervention seeking "a judicial determination of their rights as to compliance with the Settlement Agreement and management decisions regarding the redeployment of partnership funds, and management decisions regarding the distribution of partnership funds."[21] Intervenors amended their complaint as a matter of right, adding additional claims

---

[18] (Second Am. Compl. Intervention ¶ 61.)

[19] (Second Am. Compl. Intervention ¶ 62.)

[20] (Second Am. Compl. Intervention ¶ 58; *see also* Joint Mot. for Order Approving Settlement Agreement, Ex. A – Resol. & Settlement Agreement, ECF No. 42.1.) This Court has previously declined to enforce the terms of the parties' Settlement Agreement. In an Order issued on 16 February 2024, the Court held that "far too many issues of material fact remain that preclude the Court from enforcing the terms contained in the parties' Settlement [Agreement]." (Order on Defs.' Mot. Dismiss or, Alt., Enforce Settlement Agreement 3, ECF No. 126.) The Court further concluded that Defendants "failed to establish that the Settlement was a full and final settlement which entitles them to enforcement." (Order on Defs.' Mot. Dismiss or, Alt., Enforce Settlement Agreement 4.) In an Order issued on 13 June 2024, the Court again found that "there are too many genuine and disputed issues of material fact to rule definitively that the Settlement Agreement, and the provisions found therein, are enforceable." (Order on Mot. Enf't Settlement Agreement & Renewed Mot. Appointment Receiver 6, ECF No. 196.)

[21] (Compl. Intervention ¶ 1, ECF No. 146.)

for declaratory judgment, breach of fiduciary duty, and appointment of a general receiver.[22]

11. On 14 August 2024, Intervenors moved the Court to amend their complaint a second time "based on evidence recently obtained by counsel in the lawsuit."[23] The Court granted the motion in part and Intervenors filed the Second Amended Complaint in Intervention on 4 November 2024.[24]

12. In their Second Amended Complaint in Intervention, Intervenors allege "[Halifax] and those controlling it have repeatedly violated their role as the steward of [CSLP] affairs and funds for their own benefit."[25] Specifically, Intervenors allege, Halifax and those controlling it have:

    a. "engineered a self-dealing loan plan by which they received repayment of three times the amount loaned in a scheme concealed from the [CSLP] limited partners";[26]

    b. "recklessly invested more than $14 million of [CSLP] funds in [Titanium ESG,] a highly speculative energy-token startup company[,] without

---

[22] (Am. Compl. Intervention, ECF No. 148.)

[23] (Intervenors' Mot. Leave File Second Am. Compl. 2, ECF No. 220.)

[24] (Order Intervenors' Mot. Leave File Second Am. Compl., ECF No. 247.)

[25] (Second Am. Compl. Intervention ¶ 2.)

[26] (Second Am. Compl. Intervention ¶ 3.)

meaningful collateral and without authorization, over the objections of [CSLP's] Professional Manager and its limited partners";[27]

c. "acted in bad faith by promising distribution of [CSLP] capital but then, once they had succeeded in serving their own interests through the reinvestment of [CSLP] capital, they reneged on their commitment and have raised a series of pretextual obstacles to any distribution";[28] and

d. misused . . . [CSLP] capital for the unauthorized payment of legal fees to fund an internecine conflict at the [Halifax] management level and to fund the litigation efforts of one faction of [CSLP's] limited partners against the other."[29]

13. Due to the above-alleged acts, Intervenors assert claims against (i) Halifax, Plaintiff Jia Qian, Plaintiff Jiangang Jiao, Plaintiff Lina Li, and the Individual Defendants for breach of fiduciary duty; (ii) Halifax and the Individual Defendants for breach of fiduciary duty and preliminary and permanent injunction; and (iii) Halifax for breach of the Limited Partnership Agreement and breach of fiduciary duty.[30] Additionally, Intervenors seek appointment of a receiver and a "declaration from this Court that the First Amendment to the Limited Partnership Agreement is valid and that the General Partner is required to distribute to investors, net of

---

[27] (Second Am. Compl. Intervention ¶ 4.)

[28] (Second Am. Compl. Intervention ¶ 5.)

[29] (Second Am. Compl. Intervention ¶ 6.)

[30] (Second Am. Compl. Intervention.)

expenses, pro rata funds for each investor based on the amount recovered by the Partnership in the bankruptcy proceeding."[31]

14. The Individual Defendants and Halifax filed their motions to dismiss Intervenors' Second Amended Complaint on 12 November 2024 and 26 November 2024, respectively. After full briefing, the Court held a hearing on the Motions on 29 April 2025, at which Intervenors, Halifax, and the Individual Defendants were represented by counsel.[32] The Motions are now ripe for resolution.

II.

LEGAL STANDARD

15. In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider the pleading and "any exhibits attached to the [pleading,]" *Krawiec v. Manly*, 370 N.C. 602, 606 (2018), in order to determine "whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Pro. Window Cleaning, Inc.*, 120 N.C. App. 154, 158 (1995). Additionally, a court may "properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

16. Under Rule 12(b)(6), "the trial court is to construe the pleading liberally and in the light most favorable to the plaintiff, taking as true and admitted all

---

[31] (Second Am. Compl. Intervention ¶ 152.)

[32] The *pro se* Plaintiffs—Jia Qian, Jiangang Jiao, and Lina Li—also participated in the hearing with the assistance of a Mandarin language interpreter provided by the Court.

well-pleaded factual allegations contained within the [pleading]." *Donovan v. Fiumara*, 114 N.C. App. 524, 526 (1994) (cleaned up); *see also Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (recognizing that, under Rule 12(b)(6), the allegations of the complaint should be viewed as "true and in the light most favorable to the non-moving party" (cleaned up)). The claim is not to be dismissed unless it appears beyond doubt that the non-moving party could prove no set of facts in support of his claim which would entitle him to relief. *U.S. Bank Nat'l Ass'n v. Pinkney*, 369 N.C. 723, 726 (2017). The Supreme Court of North Carolina has determined that "dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

III.

ANALYSIS

17. Halifax's and the Individual Defendants' Motions seek to dismiss all claims asserted against them in Intervenors' Second Amended Complaint in Intervention pursuant to Rule 12(b)(6). The Court will take up each claim in turn.

## A. Breach of Fiduciary Duty (against Halifax, Plaintiffs, and Individual Defendants)

18. In their first claim for breach of fiduciary duty, Intervenors allege Halifax, Plaintiffs, and the Individual Defendants owe fiduciary duties to CSLP and CSLP's

limited partners.[33] Intervenors contend Halifax, Plaintiffs, and the Individual Defendants breached their fiduciary duties to CSLP and CSLP's limited partners by "approving and engaging in the improper loan program, borrowing money from members of the management committee and certain other selected members of [Halifax] on terms that were unfair to [CSLP]" and by "fail[ing] to provide proper notice of the details of the loan program to the limited partners and fail[ing] to seek or obtain their approval."[34]

19. To state a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See, e.g.*, *Green v. Freeman*, 367 N.C. 136, 141 (2013). Where there is no fiduciary duty, there can be no claim for its breach. *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 247 (2002).

20. A fiduciary relationship is one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 52 (2016). "[I]t extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*" *Dalton v. Camp*, 353 N.C. 647, 651–52 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)) (emphasis in original). "North Carolina recognizes

---

[33] (Second Am. Compl. Intervention ¶¶ 112–13.)

[34] (Second Am. Compl. Intervention ¶¶ 115–16.)

two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019) (citing *Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 635 (2016)).

***Intervenors have sufficiently alleged demand futility and that Halifax engaged in self-dealing to survive a motion to dismiss pursuant to Rule 12(b)(6).***

21.     Preliminarily, Halifax does not contest that it, as general partner of CSLP, owes a *de jure* fiduciary duty both to CSLP and the limited partners. *See He Chi v. N. Riverfront Marina & Hotel LLLP*, 2023 NCBC LEXIS 89, at *44 (N.C. Super. Ct. July 27, 2023) ("[U]nder the North Carolina Uniform Limited Partnership Act, a general partner . . . owes limited partners fiduciary duties as a matter of law." (citing N.C.G.S. § 59-403)); N.C.G.S. § 59-51.  Rather, Halifax contends that the Intervenors' first claim for relief should be dismissed because (1) Intervenors' breach of fiduciary duty claims are derivative in nature and Intervenors "cannot assert a demand and their vague, conclusory allegations of demand futility wholly fail to satisfy both their statutorily required ***pre-suit*** demand and the heightened pleading standard demanded by North Carolina law to protect Halifax's substantive rights" and (2) "they fail to plead facts adequately rebutting the business judgment rule."[35]

---

[35] (Br. Halifax Safeguard Property, LLC Supp. Mot. Dismiss Intervenors' Second Am. Compl. Intervention [hereinafter, "Halifax Br. Supp."] 16, 24, ECF No. 259 (emphasis in original).)

22. "A limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed." N.C.G.S. § 59-1001. "In a derivative action, the complaint shall set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner *or the reasons for not making the effort*." N.C.G.S. § 59-1003 (emphasis added). Here, Intervenors allege in their Second Amended Complaint that:

> [a]ny effort to cause [Halifax to] pursue [CSLP's] claims as set forth herein against itself and against Plaintiffs and Individual Defendants is not likely to succeed because: [Halifax] is controlled by Defendants and those aligned with them, Plaintiffs and Individual Defendants collectively comprise seven of the nine members of the management committee of [Halifax] and have personally benefitted from the wrongs set forth herein, [Halifax] has not taken any action to date to address these issues despite knowing about them for many months at least, and [Halifax's] litigation counsel in this case was involved in representing Individual Defendants with respect to the challenged redeployment actions and use of [CSLP] funds to pay legal fees.[36]

The Court determines that Intervenors have sufficiently alleged their reasons for not making a demand on Halifax as general partner of CSLP to survive a motion to dismiss.[37]

---

[36] (Second Am. Compl. Intervention ¶ 110.)

[37] Additionally, this Court previously determined in its Order on Intervenors' Motion for Leave to file Second Amended Complaint that "given the circumstances of this case, along with allegations found within the Proposed Second Amended Complaint, that Intervenors have sufficiently alleged, at least at the pleading stage, their reasons for not making a demand on [Halifax] as general partner of CSLP." (Order Intervenors' Mot. Leave File Second Am. Compl. 7.) The Court declines to reconsider its position on demand futility at this stage of the proceedings.

23. Regarding the second aspect of Halifax's argument, "in a limited partnership, the duty of the general partner to the limited partners is a duty to discharge his responsibilities according to the business judgment rule." *Jackson v. Marshall*, 140 N.C. App. 504, 510 (2000). Our Court of Appeals has explained the rule as follows:

> The business judgment rule operates primarily as a rule of evidence or judicial review and creates, first, an initial evidentiary presumption that in making a decision the directors acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation, and second, absent rebuttal of the initial presumption, a powerful substantive presumption that a decision by a loyal and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose.

*Mauck v. Cherry Oil Co.*, 2022 NCBC LEXIS 39, at *28 (N.C. Super. Ct. May 2, 2022) (quoting *Seraph Garrison, LLC v. Garrison*, 247 N.C. App. 115, 122 (2016)). To survive a motion to dismiss in the face of the business judgment rule, "the Complaint must allege, in other than conclusory terms, that the board was inattentive or uninformed, acted in bad faith, or that the board's decision was unreasonable." *Cone v. Blue Gem, Inc.*, 2023 NCBC LEXIS 127, at *19 (N.C. Super. Ct. Oct. 13, 2023) (quoting *Green v. Condra*, 2009 NCBC LEXIS 20, at *20 (N.C. Super. Ct. Aug. 14, 2009)). Conclusory assertions in the pleadings are insufficient and allegations of bad faith must be pleaded through facts. *See Mauck*, 2022 NCBC LEXIS 39, at *28–29.

24. Here, Intervenors allege (1) a member of Halifax's management committee solicited loans to be made to CSLP by management committee members, pledging that CSLP would repay these members three times the loan amounts,[38] (2) bank

---

[38] (Second Am. Compl. Intervention ¶ 76.)

records indicate that all but one of the management committee members loaned over $1 million to CSLP and received more than $3 million of CSLP funds in repayment,[39] (3) "[c]ounsel for Intervenors repeatedly asked counsel for the management committee members to set forth their position on the loans and to explain how these loans could be consistent with their fiduciary duties[,]"[40] and (4) neither Halifax nor the management committee "made any disclosure concerning this triple repayment loan to the limited partners of CSLP, nor was the approval of [CSLP's] limited partners ever sought or obtained."[41]   Such allegations of financial self-dealing are sufficient to overcome the protections afforded by the business judgment rule at the 12(b)(6) stage.  *Vernon v. Cuomo*, 2009 NCBC LEXIS 1, at *38 (N.C. Super. Ct. Mar. 17, 2009) ("[T]he protection . . . afforded by the business judgment rule does not apply where the plaintiff has made an adequate showing that the directors breached their duty of loyalty . . . by having . . . engaged in self-dealing[.]"); *see also Bandy v. A Perfect Fit for You, Inc.*, 2018 NCBC LEXIS 21, at *14–15 (N.C. Super. Ct. Mar. 7, 2018) (denying motion to dismiss breach of fiduciary duty claim where allegations included a sole director's failure to stop the corporation "from making fraudulent Medicaid reimbursement claims" and engaging in "self-dealing transactions to transfer money from [the corporation] to herself").   Accordingly, Halifax's motion to dismiss Intervenors' claim for breach of fiduciary duty is **DENIED**.

---

[39] (Second Am. Compl. Intervention ¶ 76.)

[40] (Second Am. Compl. Intervention ¶ 77.)

[41] (Second Am. Compl. Intervention ¶ 77.)

***The Individual Defendants are not in a de jure or de facto fiduciary relationship with CSLP or CSLP's limited partners and, hence, cannot be liable for breach of fiduciary duty.***

25. Individual Defendants similarly seek to dismiss Intervenors' first claim for breach of fiduciary duty, contending "Individual Defendants do not owe CSLP a fiduciary duty" and, thus, cannot be held liable for breach of fiduciary duty.[42] The Court agrees.

26. The Individual Defendants are members of Halifax as well as members of Halifax's nine-member management committee.[43] Members of an LLC which is the general partner of a limited partnership do not owe any fiduciary duties as a matter of law to the limited partnership, even if those members serve on the management committee of the general partner. *See He Chi*, 2023 NCBC LEXIS 89, at *41. To hold otherwise would disregard the protections afforded by the corporate form.[44]

27. Furthermore, as this Court has stated previously, the Individual Defendants do not owe *de facto* fiduciary duties to CSLP. "The standard for finding

---

[42] (Defs.' Br. Supp. Mot. Dismiss Intervenors' Second Am. Compl. Intervention [hereinafter, "Individual Defs.' Br. Supp."] 7, ECF No. 253.)

[43] (Second Am. Compl. Intervention ¶¶ 14–17.)

[44] Additionally, this Court previously determined in its Order on Intervenors' Motion for Leave to file Second Amended Complaint that

> [to t]he extent any fiduciary duties are owed to CSLP, they are owed by [Halifax] as the general partner to CSLP as the limited partnership. Beyond those duties, the Court determines that the Individual Defendants do not owe fiduciary duties as a matter of law to the limited partnership they manage indirectly through their management of [Halifax].

(Order Intervenors' Mot. Leave File Second Am. Compl. 11.) The Court similarly declines to reconsider its position on the fiduciary duties owed by Individual Defendants.

a *de facto* fiduciary relationship is a demanding one: Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 636 (2016) (citation and internal quotation marks omitted). It is insufficient to allege mere influence over another's affairs. *Hartsell v. Mindpath Care Ctrs.*, 2022 NCBC LEXIS 130, at **11 (N.C. Super. Ct. Nov. 2, 2022).

28. Thus, the question here is whether Intervenors have sufficiently pled that the Individual Defendants "held all the cards." In the Second Amended Complaint Intervenors allege "Individual Defendants have used their power over CSLP to make the unilateral, self-dealing decision to misappropriate [CSLP] funds, which would only be possible in a situation where the Defendants 'hold all the cards.'"[45] However, the Individual Defendants consist of a minority of Halifax's management committee and the membership of the management committee has changed in composition throughout this litigation. Furthermore, as this Court has previously stated, "[i]t is clear that [Halifax], as general partner of CSLP—not the Individual Defendants—held some cards as it relates to CSLP."[46] As no *de jure* or *de facto* fiduciary relationship exists between Individual Defendants and CSLP, the Court **GRANTS**

---

[45] (Intervenors' Br. Opp. Defs.' Mot. Dismiss Intervenors' Second Am. Compl. Intervention [hereinafter, "Intervenors' Br. Opp. Individual Defs.' Br. Supp."] 8, ECF No. 276; *see also* Second Am. Compl. Intervention ¶¶ 76–80.)

[46] (Order Intervenors' Mot. Leave File Second Am. Compl. 11.)

Individual Defendants' Motion to dismiss Intervenors' first claim for breach of fiduciary duty.

29. In their response brief, Intervenors also contend that "Individual Defendants can be liable for breach of fiduciary duty under a veil-piercing theory."[47] However, as Individual Defendants state, Intervenors neither allege that the corporate veil should be pierced in their Second Amended Complaint in Intervention nor does their brief set out any facts that support application of a veil-piercing theory.[48] Thus, the Court declines to address Intervenors' veil-piercing argument.

## B. **Breach of Fiduciary Duty (against Halifax, Plaintiffs, and Individual Defendants)**

30. In their second claim for breach of fiduciary duty, Intervenors allege Halifax and Individual Defendants breached their fiduciary duties to CSLP and CSLP's limited partners by "executing a promissory note in the amount of $16.4 million to Titanium ESG on a redeployment plan without obtaining the approval of the limited partners of CSLP and failed to provide proper notice of the details of the payments and promissory note to the limited partners."[49] Halifax seeks dismissal of Intervenors' second claim, contending it "is barred by the protections afforded under the business judgment rule" and Intervenors "fail[] to allege demand futility with

---

[47] (Intervenors' Br. Opp. Individual Defs.' Br. Supp. 8.)

[48] (Defs.' Reply Br. Supp. Mot. Dismiss Intervenors' Second Am. Compl. Intervention [hereinafter, "Individual Defs.' Reply"] 6, ECF No. 279.)

[49] (Second Am. Compl. Intervention ¶ 130.)

sufficient particularity."[50]  Individual Defendants similarly seek dismissal of Intervenors' claim, arguing "Individual Defendants do not owe CSLP a fiduciary duty."[51]

31.  As stated previously, the Court holds that no *de jure* or *de facto* fiduciary relationship exists between Individual Defendants and CSLP.[52]  Therefore, the Court similarly **GRANTS** Individual Defendants' Motion to dismiss Intervenors' second claim for breach of fiduciary duty.

32.  Regarding the first aspect of Halifax's argument, as Intervenors state in their response brief, Halifax "attempts to use extrinsic evidence to contradict [Intervenors'] allegations[.]"[53]  At the motion to dismiss stage, "the trial court is to construe the pleading liberally and in the light most favorable to the plaintiff, taking as true and admitted all well-pleaded factual allegations contained within the [pleading][,]" *Donovan*, 114 N.C. App. at 526 (cleaned up), and a claim is not to be dismissed unless it *appears beyond doubt* that the non-moving party could prove *no set of facts in support of his claim which would entitle him to relief*, *U.S. Bank Nat'l Ass'n,* 369 N.C. at 726.  It is not for the Court to decide, at this stage of the proceedings, whether Intervenors will ultimately succeed on their claim.

---

[50] (Halifax Br. Supp. 17, 24.)

[51] (Individual Defs.' Br. Supp. 7.)

[52] (*Supra* ¶¶ 25–28.)

[53] (Intervenors' Br. Opp. Def. HSP's Mot. Dismiss Intervenors' Second Am. Compl. Intervention 7, ECF No. 278.)

33.    As stated above, to survive a motion to dismiss in the face of the business judgment rule, "the Complaint must [only] allege, in other than conclusory terms, that the board was inattentive or uninformed, acted in bad faith, or that the board's decision was unreasonable." *Cone*, 2023 NCBC LEXIS 127, at *19.  Here, Intervenors allege that:

a.  "Titanium ESG is a start-up entity, having been incorporated in January 2024, with no meaningful business operations to date, no track record, and no revenue";[54]

b.  "The Professional Manager hired by [Halifax's] management committee refused to implement the Titanium ESG redeployment plan because it would constitute a breach of fiduciary duties since the investment 'would be to a startup in need of seed money in a risky industry sector that is subject to considerable regulatory flux.  Worse, no collateral of any substance was offered to secure the investment'";[55]

c.  "The Professional Manager discussed the proposed redeployment to Titanium ESG with [Halifax's] EB-5 immigration counsel, who concurred with the Professional Manager's view that the Titanium ESG investment was improper";[56] and

---

[54] (Second Am. Compl. Intervention ¶ 95.)

[55] (Second Am. Compl. Intervention ¶ 96.)

[56] (Second Am. Compl. Intervention ¶ 97.)

d. "[Halifax], however, under the control of the Individual Defendants, defied the Professional Manager and the interests of CSLP by executing a promissory note in the amount of $16.4 million to Titanium ESG on a redeployment plan without obtaining the approval of the limited partners of CSLP and failed to provide proper notice of the details of the payments and promissory note to the limited partners."[57]

Based on the above, the Court concludes that Intervenors have alleged sufficient non-conclusory facts that Halifax "was inattentive or uninformed, acted in bad faith, or that the board's decision was unreasonable." *Cone*, 2023 NCBC LEXIS 127, at *19. Therefore, the Court **DENIES** Halifax's motion to dismiss Intervenors' second claim for breach of fiduciary duty.[58]

## C. **Declaratory Judgment as to the Distribution of Partnership Capital and Distribution Amount**

34. Halifax and Individual Defendants next seek to dismiss Intervenors' claim for declaratory judgment. In their third claim for relief, Intervenors "seek a declaration from this Court that the First Amendment to the Limited Partnership Agreement is valid and that [Halifax] is required to distribute to investors, net of expenses, pro rata funds for each investor based on the amount recovered by the Partnership in the bankruptcy proceeding."[59]

---

[57] (Second Am. Compl. Intervention ¶ 130.)

[58] The Court declines to address Halifax's argument that Intervenors "fail[] to allege demand futility with sufficient particularity" as the Court has previously concluded that Intervenors' Second Amended Complaint adequately alleges demand futility. (*See supra* ¶¶ 21–22.)

[59] (Second Am. Compl. Intervention ¶ 152.)

35.    Under the Declaratory Judgment Act, "[a]ny person interested under a . . . written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract . . ., may have determined any question of construction or validity arising under the . . . contract . . ., and obtain a declaration of rights, status, or other legal relations thereunder." N.C.G.S. § 1-254. When asserting a claim for declaratory judgment, the claimant "must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties . . . with regard to their respective rights and duties[.]" *Lide v. Mears*, 231 N.C. 111, 118 (1949).  A motion to dismiss pursuant to Rule 12(b)(6) is "seldom an appropriate pleading in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.  It is allowed only when the record clearly shows that there is *no basis* for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439 (1974) (emphasis added).

36.    In seeking to dismiss Intervenors' claim for declaratory judgment, Halifax contends that (1) the amendment is not proper or enforceable and (2) the amendment, even if it was validly adopted and enforceable, does not require any distribution.[60] Individual Defendants additionally argue Intervenors' declaratory judgment claim fails with respect to them because "the claim will not clarify or settle legal relations between CSLP and the Individual Defendants."[61]

---

[60] (Halifax Br. Supp. 10–16.)

[61] (Individual Defs.' Br. Supp. 10.)

37.     As stated earlier, in deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences in the light most favorable to the non-moving party.  At this stage in litigation, the Court does "not predetermine the likelihood that [Intervenors] will win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of [their] case."  *K.H. v. Dixon*, 296 N.C. App. 62, 74 (2024) (quoting *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 341 (2009)); *see also Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").  Here, as Intervenors state, Halifax "seeks to dismiss the declaratory judgment claim on the basis that Intervenors will not ultimately be entitled after trial to the declaration they seek."[62]  This is the incorrect legal standard at the Rule 12(b)(6) stage; at the Rule 12(b)(6) stage, Intervenors' need only plead the existence of an actual controversy between the parties.  Intervenors' allegations establish a genuine controversy over the validity and enforceability of the First Amendment to the Limited Partnership Agreement and whether Halifax is required to make distributions to Intervenors.  Therefore, the Court **DENIES** Halifax's Motion as to the claim for declaratory judgment.

38.     Regarding Individual Defendants' argument, Individual Defendants confuse what is required to sustain a claim for declaratory judgment at the Rule 12(b)(6) stage

[62] (Intervenors' Br. Opp. Def. HSP's Mot. Dismiss Intervenors' Second Am. Compl. Intervention 3.)

with when a Court has *discretion* to decline a request for declaratory relief. Certainly, pursuant to N.C.G.S. § 1-257 (Discretion of Court), a trial court has *discretion* to "decline a request for declaratory relief when the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue[.]" *Chambers v. Moses H. Cone Mem'l Hosp.*, 2021 NCBC LEXIS 63, at *4 (N.C. Super. Ct. July 19, 2021) (quoting *Augur v. Augur*, 356 N.C. 582, 588–89 (2002)). All Intervenors are required to plead with regard to this claim to survive a motion dismiss is the existence of an actual controversy. Intervenors' allegations, as stated above, establish a genuine controversy. Furthermore, at this stage in the proceedings, the Court cannot definitively state that Intervenors' declaratory judgment claim will serve *no* useful purpose in clarifying legal relations between the Intervenors and Individual Defendants. Thus, Individual Defendants' Motion as to Intervenors' claim for declaratory judgment is similarly **DENIED**.

## D. Breach of Contract (against Halifax)

39. Intervenors' claim against Halifax for breach of contract is premised on Halifax's alleged breach of the Limited Partnership Agreement by "us[ing] over $1 million of [CSLP] funds to date to finance the litigation efforts of Plaintiffs and Individual Defendants against other limited partners and to finance the appearance and assertion of claims by [Halifax] in this litigation."[63] Intervenors contend, "[w]hile Halifax is entitled to reimbursement of legitimate expenses relating to [CSLP] business, [Halifax] is not permitted to use [CSLP] funds for internal governance

---

[63] (Second Am. Compl. Intervention ¶ 158.)

disputes at the [Halifax] level."[64] In particular, Intervenors allege, Halifax breached section 5.06(a) of the Limited Partnership Agreement which provides that:

> To the maximum extent permitted by law, the Partnership [(CSLP)] shall indemnify, defend, and hold harmless the General Partner [(Halifax)] and its Affiliates (including the Regional Center) and their shareholders, members, managers, officers, directors, agents, employees, representatives, attorneys, accountants, consultants and other persons operating on its behalf from and against any loss, liability, damage, cost, or expense (including reasonable attorney's fees) arising out of or alleged to arise out of any demands, claims, suits, actions, or proceedings against the General Partner, by reason of any act or omission performed by it (including its employees and agents) while acting in good faith on behalf of the Partnership and within the scope of the authority of the General Partner pursuant to this Agreement, and any amount expended in any settlement of any such claim of liability, loss, or damage; provided, however, that (i) the General Partner must have in good faith believed that such action was in the best interests of the Partnership, and such course of action or inaction must not have constituted breach of its fiduciary duty; and (ii) any such indemnification shall be recoverable from the assets of the Partnership, not from the assets of the Limited Partner, and no Partner shall be personally liable therefore. ***This indemnity shall be operative only in the context of third-party suits, and not in connection with demands, claims, suits, actions or proceedings initiated by any Partner or any Affiliate thereof against another Partner.*** In no event, however, shall a Limited Partner bring suit against the General Partner, or recover damages from the General Partner, in an amount that exceeds the amount invested by the Limited Partner in the Partnership.[65]

40. "Unlike claims subject to Rule 9, a claim for breach of contract is not subject to heightened pleading standards[.]" *AYM Techs., LLC. v. Rodgers*, 2018 NCBC LEXIS 14, at \*52–53 (N.C. Super. Ct. Feb. 9, 2018). "The elements of a claim for

---

[64] (Second Am. Compl. Intervention ¶ 155.)

[65] (Br. Supp. Mot. Appoint Receiver, Ex. A- Partnership Agreement, ECF No. 83.1 (emphasis added).)

breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). "Thus, in any breach of contract action, the complaint must allege the existence of a contract between the plaintiff and the defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to the plaintiff from such breach." *Howe v. Links Club Condo. Ass'n*, 263 N.C. App. 130, 139 (2018) (cleaned up).

41. Halifax argues that the "Partnership Agreement allows Halifax to be reimbursed for expenses, including attorneys' fees."[66] Specifically, Halifax contends that "Intervenors focus exclusively on the indemnification and advancement provisions of the [Limited Partnership Agreement], which grant Halifax certain rights to demand indemnification from CSLP . . . [even though] [o]ther provisions clearly provide that Halifax's costs and expenses incurred to perform its duties as general partner are reimbursable even where such reimbursement could be read to contradict other provisions in the [Limited Partnership Agreement]."[67]

42. Halifax's contention ignores, however, that the trial court must "take the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor" when evaluating whether a complaint adequately states a claim for relief for purposes of Rule 12(b)(6). *New Hanover Cnty. Bd. of Educ. v. Stein*, 380 N.C. 94, 107 (2022) (quoting *N.C. Consumers Power*, 285 N.C. at 439). As previously

---

[66] (Halifax Br. Supp. 20.)

[67] (Halifax Br. Supp. 20.)

stated, it is not for the Court to decide, at this stage of the proceedings, whether Intervenors will ultimately succeed on their claim.

43. Here, Intervenors plead that the "Limited Partnership Agreement constitutes a binding agreement between [CSLP], the Limited Partners, and [Halifax][,]"[68] that Halifax used CSLP funds "to finance the litigation efforts of Plaintiffs and Individual Defendants against other limited partners and to finance the appearance and assertion of claims by [Halifax] in this litigation[,]"[69] and that, in so doing, Halifax breached section 5.06(a) of the Limited Partnership Agreement.[70] Intervenors identify the specific contract provision that was allegedly breached (Section 5.06—Indemnification of General Partner), the facts constituting the alleged breach, and the amount of damages resulting from the breach (in excess of $1 million). *See Howe*, 263 N.C. App. at 139. Since Intervenors have met this low bar, the Court shall **DENY** Halifax's Motion as to Intervenors' claim for breach of contract.

## E. Breach of Fiduciary Duty (against Halifax)

44. Intervenors next allege that Halifax breached its fiduciary duties to CSLP and CSLP's limited partners by (1) "us[ing] over $1 million of [CSLP] funds to date to finance the litigation efforts of Plaintiffs and Individual Defendants against other limited partners and to finance the appearance and assertion of claims by [Halifax]

---

[68] (Second Am. Compl. Intervention ¶ 154.)

[69] (Second Am. Compl. Intervention ¶ 158.)

[70] (Second Am. Compl. Intervention ¶ 157.)

in this litigation"[71] and (2) "improperly transferr[ing] $230,000 out of a [CSLP] account to Financial Advisors relating to the Titanium ESG investment."[72]  Halifax seeks dismissal of this claim, contending that it did not breach its fiduciary duties to CSLP because the "Partnership Agreement allows Halifax to be reimbursed for expenses, including attorneys' fees"[73] for the same reasons stated in response to Intervenors' breach of contract claim.

45.    Halifax's argument, as with the breach of contract claim, focuses on whether Intervenors will ultimately succeed on their claim.  At the motion to dismiss stage, to state a claim for breach of fiduciary duty, a plaintiff need only plead the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach.  *See, e.g.*, *Green*, 367 N.C. at 141.  Here, Intervenors allege that (1) Halifax, "as the General Partner of [CSLP], owes fiduciary duties to the Partnership and its limited partners, including the duty to act with the utmost good faith and loyalty[,]"[74] (2) Halifax breached those fiduciary duties by misusing CSLP funds,[75] and (3) "as a direct and proximate result of [Halifax's] breaches of fiduciary duty, [CSLP] has suffered [over $1 million of] financial harm."[76]  The Court concludes Intervenors have

---

[71] (Second Am. Compl. Intervention ¶ 168.)

[72] (Second Am. Compl. Intervention ¶ 173.)

[73] (Halifax Br. Supp. 20.)

[74] (Second Am. Compl. Intervention ¶ 163.)

[75] (Second Am. Compl. Intervention ¶¶ 168–74.)

[76] (Second Am. Compl. Intervention ¶¶ 168, 173, 176.)

alleged sufficient facts to plead a *prima facie* case for breach of fiduciary duty and to withstand a motion to dismiss at the 12(b)(6) stage. Therefore, the Court **DENIES** Halifax's motion to dismiss this claim.

## F. Preliminary and Permanent Injunction Against Misuse of Partnership Funds (against Halifax and Individual Defendants)

46. In their Second Amended Complaint, Intervenors allege Halifax and Halifax's management committee (1) are "using [CSLP] funds on an ongoing basis to pay their legal fees in this lawsuit[,]"[77] (2) that "the use of [CSLP] funds for this lawsuit is unauthorized and a breach of fiduciary duties[,]"[78] and (3) request an injunction to prevent Halifax and Individual Defendants from "continu[ing] to dissipate [CSLP] assets[.]"[79] Halifax and Individual Defendants seek dismissal of this claim, contending "[i]njunctions are remedies, not independent causes of action."[80]

47. Halifax and Individual Defendants are correct with respect to Intervenors' claim for an injunction. It is well settled that "injunctive relief is not a standalone claim[.]" *Window World of St. Louis, Inc. v. Window World of Bloomington, Inc.*, 2021 NCBC LEXIS 88, at *15 (N.C. Super. Ct. Oct. 6, 2021); *see also BIOMILQ, Inc. v.*

---

[77] (Second Am. Compl. Intervention ¶ 179.)

[78] (Second Am. Compl. Intervention ¶ 183.)

[79] (Second Am. Compl. Intervention ¶ 184.)

[80] (Halifax Br. Supp. 28 (quoting *Al-Hassan v. Salloum*, 2020 NCBC 14, at *3 (N.C. Super. Ct. Feb. 20, 2020)).)

*Guiliano*, 2024 NCBC LEXIS 58, at *26 (N.C. Super. Ct. Apr. 19, 2024) (Injunctive relief "is an ancillary remedy, not an independent cause of action." (citing *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005))); *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *18 (N.C. Super. Ct. July 26, 2018) ("[I]njunctions are remedies, not independent causes of action."). Since there is no standalone claim for injunctive relief in North Carolina, Halifax's and Individual Defendants' Motions are **GRANTED** with respect to this claim.

48. However, the Court's finding here does not preclude Intervenors from seeking injunctive relief later in this proceeding should the relevant and credible evidence warrant it. Nor does this finding impact the resolution of Intervenors' Motion for Preliminary Injunction, filed on 22 November 2024, in which Intervenors, pursuant to Rule 65, "move[] the Court for a preliminary injunction restraining [Halifax] and its managers, members, agents, servants, employees, attorneys and those persons in active concert or participation with them from using [CSLP] funds to pay their legal fees in this lawsuit[.]"[81] The Court simply determines that Intervenors' request is best addressed through Intervenors' Motion for Preliminary Injunction.

G. **Appointment of Receiver**

49. Halifax and Individual Defendants lastly seek dismissal of Intervenors' claim for appointment of a receiver. In their Second Amended Complaint, Intervenors request that (1) a receiver be appointed for Halifax and CSLP and (2) the

---

[81] (Intervenors' Mot. Prelim. Inj., ECF No. 254.)

"Court authorize the receiver to have full authority of [Halifax], manage the affairs of [CSLP] in the best interests of the partners and investors, make all decisions regarding the distribution of assets, make all decisions regarding the redeployment of assets, and assume control over and dispose of all or any portion of [CSLP's] assets wherever located."[82]  Individual Defendants maintain Intervenors' claim should be dismissed in relation to them because the claim "is addressed to [Halifax] . . . [and] is not being made against the Individual Defendants."[83]  Halifax, however, contends that Intervenors' request for appointment of a receiver has "already [been] denied by this Court on two prior occasions" and "Intervenors offer no allegations reasonably presenting the 'rare and drastic' conditions necessary for the appointment of a receiver."[84]

50.    As Halifax asserts, this Court has thrice considered the issue of appointing a receiver of Halifax.  The Court first ruled on the issue of appointing a receiver on 21 February 2024, where it denied Plaintiffs' and the Intervenors' separate requests for the appointment of a general receiver over Halifax, holding that "the parties seeking appointment of a receiver have not shown the kind of urgent need that warrants the extraordinary relief requested."[85]  On 13 June 2024, the Court addressed Plaintiffs' Renewed Motion for Appointment of Receiver, ultimately

[82] (Second Am. Compl. Intervention ¶¶ 187–88.)

[83] (Individual Defs.' Br. Supp. 10.)

[84] (Halifax Br. Supp. 26.)

[85] (Order on Mots. Appoint Receiver, ECF No. 143.)

denying without prejudice the motion.[86]  Again, on 24 October 2024, the Court considered Intervenors' request for appointment of a receiver, finding "[g]iven the circumstances of this action and how it continues to evolve at every stage, the Court determines that Intervenors' claim for appointment of receiver is not futile, as Intervenors have alleged facts relating to the alleged misuse of CSLP funds for self-dealing purposes."[87]  As this action continues to evolve at every stage, the Court determines it would be premature to foreclose the appointment of a receiver. Accordingly, the Court **DENIES** the Motions with respect to this claim.

IV.

CONCLUSION

51.  **WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS in part** and **DENIES in part** the Motions as follows:

a. Individual Defendants' Motion is **GRANTED** with respect to Intervenors' first and second claims for breach of fiduciary duty, and Intervenors' claims are hereby **DISMISSED with prejudice** to this extent.

b. Halifax's and Individual Defendants' Motions are **GRANTED** with respect to Intervenors' claim for injunctive relief, and Intervenors' claim is hereby **DISMISSED without prejudice**.

---

[86] (Order on Mot. Enf't Settlement Agreement & Renewed Mot. Appointment Receiver.)

[87] (Order Intervenors' Mot. Leave File Second Am. Compl. 13.)

c.  Halifax's Motion is **DENIED** as to Intervenors' first, second, and fifth claims for breach of fiduciary duty and fourth claim for breach of contract.

d.  Halifax's and Individual Defendants' Motions are **DENIED** as to Intervenors' claims for declaratory judgment and appointment of receiver.

e.  Halifax's and Individual Defendants' Motions are otherwise **DENIED**.

**SO ORDERED**, this the 15th day of August, 2025.


/s/ A. Todd Brown
A. Todd Brown
Special Superior Court Judge
 for Complex Business Cases